## SODERBERG v. ATLANTIC LIGHTERAGE CO. et al.

(District Court, S. D. New York. August 10, 1926.)

1. **Shipping ⬤�longdash⟩54(1)—Liability for injuries to chartered lighter rests primarily on one placing and keeping her in unsafe position.**

Liability for injuries to chartered lighter rests primarily on one who placed and kept her in an obviously unsafe position.

2. **Shipping ⬤�longdash⟩54(1)—Charterer agreeing to return barge in good order is secondarily liable for injury occasioned by another.**

Where charter provides that charterer will return barge at end of term in as good order as when taken, except for ordinary wear and tear, charterer is secondarily liable for injury occasioned by another to whom it intrusted her.

In Admiralty. Libel by Ernest Soderberg, managing owner of the lighter Alert, against the Atlantic Lighterage Company, wherein the Cunard Steamship Company, Limited, was impleaded as respondent. Decree for libelant, primarily against impleaded respondent, and secondarily against respondent.

See, also, 15 F.(2d) 209.

Burlingham, Veeder, Masten & Fearey and Eugene Underwood, Jr., all of New York City, for libelant.

Macklin, Brown, Lenahan & Speer and Pierre M. Brown, all of New York City, for Atlantic Lighterage Co.

Lord, Day & Lord, Allan B. A. Bradley and George De Forest Lord, all of New York City, for Cunard Steamship Company, Limited.

GODDARD, District Judge. Suit by owner of barge Alert to recover for injuries sustained by her while under charter. The Atlantic Lighterage Company, the charterer, has impleaded the Cunard Steamship Company, Limited, alleging that the damage was caused by its having placed the barge in an unsafe position alongside its steamship for the purpose of facilitating the loading of the barge's cargo on board its ship. The Cunard Steamship Company's answer to the libel is in the nature of a denial. Its answer to the petition alleges that it "as time charterer [of the steamship] entered into a contract with Funch, Edye & Co., Inc. * * * for the booking of cargo on said steamship Anglo-Chilean and for the handling of said vessel in general. * * * That said Funch, Edye & Co., Inc., thereafter employed stevedores to load said vessel. No agents, servants, or employees of the Cunard Steamship Company, Limited, had anything whatsoever to do with the loading of said steamship Anglo-Chilean, or the shifting of any lighters, barges, or scows alongside said vessel, all of which services were done entirely by longshoremen employed by said stevedores and who were in no way subject to the orders or instructions of the respondent Cunard Steamship Company, Limited; said stevedores being independent contractors."

On January 12, 1920, at 7:30 p. m., the Alert, with a cargo consigned to the Anglo-Chilean, was placed in the slip between Piers 2 and 3, Bush Stores, South Brooklyn. On January 13th, at 11:30 a. m., she was shifted to alongside the Anglo-Chilean. When the stevedores stopped work for the day, she was shifted back to a safe berth at the bulkhead. Northwest storm warnings had been issued by the United States Weather Bureau. Late in the evening of the 13th a gale started. The wind increased from 29 miles per hour and reached a velocity of 70 miles per hour. About 8 o'clock on the morning of the 14th, the Alert was shifted to her former position at the Anglo-Chilean's starboard quarter, a little inside of the end of the pier. Hoagland, the master of the Alert, testified that "it was blowing pretty hard when they put us there." Sorrenson, a representative of the Atlantic Lighterage, testified:

"Q. What was the next thing that you heard about the lighter Alert? A. The next morning the steamship people shifted the boat themselves, up alongside of the ship. * * *

"Q. Refresh your recollection from the statement. A. It was still blowing terrible hard (examines statement).

"Q. Did you go back there on the afternoon of January 14th? A. No; at 8 o'clock in the morning it was blowing hard, and she was working alongside of the ship.

"Q. Were you down on the boat? A. I was down on the steamer; not on the lighter.

"Q. Were you talking to the stevedores? A. I was talking to the stevedores and the captain. I was; yes.

"Q. What did you say to the stevedores? A. That they should not take the boat alongside of the ship while it was blowing so hard.

"Q. Did you make any request to bring her away? A. Yes.

"Q. And what did they say? A. They wanted the cargo.

"Q. Did you leave there then? A. I left there; yes."

Notwithstanding Sorrenson's objections to the steamship people that the Alert was

in an unsafe position, they were apparently in a hurry to complete the loading of the Anglo-Chilean and made no effort to move her back into a safe position. The barge's two lines parted, and the Anglo-Chilean put out one large hawser, and their stevedores continued to work her until the rolling and banging of the barge against the steamship compelled them to stop. The barge remained in this situation until the next day and was injured. The master of the barge took no part in the shifting of the barge; in fact, he was endeavoring to locate the representative of the Atlantic Lighterage Company to advise them of the situation, and to have them send a tug to move the barge into a safer position, and a tug was sent, but, owing to the heavy weather, could not reach the barge.

[1, 2] Liability for the injuries to the Alert rests primarily on the one who placed and kept her in the obviously unsafe position. The charter provided that the charterer would return the barge at the end of the term in as good order as when taken, except for ordinary wear and tear; so it is secondarily liable for the injury which was occasioned by another to whom it had intrusted her.

The Cunard Steamship Company, Limited, contend that Funch, Edye & Co. had charge of the Anglo-Chilean, and that they or the stevedores who were loading her are liable, and not the Cunard Company, if there be liability. The following stipulation was entered into at the trial:

"The stipulation which I desire counsel to make is that prior to this time the Cunard Company had entered into an arrangement or contract with Funch, Edye & Co., a Delaware corporation, for the booking of cargo on the steamship Anglo-Chilean, and the handling of this vessel in general on the Rotterdam and Amsterdam berths; that they turned the vessel over to Funch, Edye & Co. to berth, to book cargo for her, and to make all arrangements for the loading and discharging of cargo from her, and to make arrangements as to what berth she should have or occupy, and that any stevedores employed in this case were employed by Funch, Edye & Co., and not by the Cunard Company; that the arrangement between Funch, Edye & Co. and the Cunard Company was this: That Funch, Edye & Co. were handling the Anglo-Chilean entirely, and were to pay all disbursements, book freight for her, collect freight, deduct the disbursements from the gross freight collected, deduct Funch, Edye & Co.'s commission from the net pro-

ceeds, and remit the balance to the Cunard Company. That would be the testimony of the witness I have in court."

But from the record and the above stipulation it appears that Funch, Edye & Co. were acting as agents for the Cunard Company, and it does not appear that stevedoring and placing of the barge were carried on by independent contractors, and the facts do not bring the case within The Satilla (C. C. A.) 235 F. 58.

Accordingly a decree may be entered in favor of the libelant against the Cunard Steamship Company, Limited, as primarily liable, and the Atlantic Lighterage Company as secondarily liable, with the usual reference to ascertain the damages.